44 N.J. Super. 237 (1957)
130 A.2d 61
BUDGET CORPORATION OF AMERICA, PLAINTIFF-APPELLANT,
v.
WARREN H. HIBBERT AND VIRGINIA HIBBERT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1957.
Decided March 22, 1957.
*238 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Nathan H. Sisselman argued the cause for appellant (Messrs. Addonizio, Sisselman & Gordon, attorneys).
Mr. Hugh C. Spernow argued the cause for respondents.
The opinion of the court was delivered by JAYNE, J.A.D.
The transaction from which this litigation eventuated has the inferential aspect of another illustration of the entrancements of high-pressure salesmanship. On October 14, 1954 the defendants, a truck driver and his wife, were evidently enticed by an agent of the National Fire Safety Counsellors, a company whose name and activities have now become rather well known, to purchase a "complete home fire detection system" for the price of $595 payable, however, in 36 monthly instalments of $21.36. The purchase order contained, inter alia, the generous covenant of the seller that "The National Fire Safety Counsellors' Engineers" would "replace within 30 years from date of installation, free of cost, any part of the equipment, as originally installed, which, upon its inspection, proves to be defective."
*239 Among the many documents which the defendants are alleged to have contemporaneously signed is a promissory note of the date aforementioned in the sum of $768.96, payable to the seller in 36 successive monthly instalments of $21.36 each, commencing on December 18, 1954. The note embodied in small type the agreement, inter alia, that if any periodical payment should become overdue for a period in excess of 10 days, the makers would pay a "late charge" of five cents for each dollar overdue, and in the event of default in any of the terms of the note, the makers were obligated to pay court costs and an attorney's fee of 15 percent of the unpaid indebtedness "if the note is placed in the hands of an attorney for collection."
The seller, National Fire Safety Counsellors, in pursuance of what seems to be its customary practice, promptly negotiated the defendants' note, without recourse, to the plaintiff, Budget Corporation of America, which institution thereafter discounted it, with recourse, at the Passaic-Clifton National Bank.
The defendants declare by their testimony that on the occasion at which they were visited by the agent of National, it was represented to them by the latter that the proposed installation of the alarm system in their residence was to be in furtherance of an advertising project of the company by which they would receive from National the sum of $10 for the name of each prospective customer, and with the submission of two each month their only monetary obligation would be the payment of $1.36 monthly. Significantly, National sent them in advance a check for $60 the following day. The defendants asserted that they were also informed that although the purchase order and terms of sale which they were requested to sign were on the printed forms conventionally used in such transactions, their credits would be in conformity with the advertising and promotion plan. Yes, the purchase order embraced the familiar stipulation that "There are no covenants or agreements, other than those set forth." No reference whatever to the credit arrangement is discoverable in the document.
*240 The defendants not having received any additional contribution from National applicable thereto, the fourth instalment was not paid by them. The plaintiff with commendable diligence reacquired the note from the bank and thereafter instituted the present action in the Passaic County District Court to recover from the defendants the unpaid principal of the note, $704.88, accrued interest thereon of $3.52, an attorney's fee of $105.72, amounting in all to $814.12, to which would be added the claimed costs of suit and interest to date. It may well be iterated that the "total price" of the system is stated in the purchase order to be $595.
In defense the defendants avowed that they were unaware of subscribing their signatures to a promissory note and doubted the genuineness of their purported signatures thereon as makers. In relation to the authenticity of the signatures, the plaintiff presented at the trial only the following stipulation of counsel:
"In connection with the signatures on the note, it has been agreed between counsel that should expert testimony with respect to the authenticity of the signature have been produced [for the plaintiff], such testimony would be to the effect that the signatures were genuine. The stipulation, however, is not to be taken as an admission on the part of the defendants."
Both defendants admitted the verity of their signatures on the front and back of the purchase order and other incidental writings but denied, although somewhat qualifiedly, that the signatures were theirs on the promissory note. Concededly, the note had been detached from the bottom of a full sheet of paper, the top portion of which is said to have been lost.
In behalf of the plaintiff, so-called "blown up" photographic exhibits of comparative signatures of the defendants were made available to the trial judge. Oddly, or perhaps not, the agent of National in whose presence the signatures were alleged to have been subscribed to the several writings was not summoned personally to testify or his testimony otherwise elicited and introduced.
*241 The trial judge, upon consideration of all of the evidence pertinent to that issue, concluded that the genuineness of the defendants' signatures on the note itself remained at the close of the trial in such a state of dubiety and incertitude that the plaintiff had failed to establish that factual element of its alleged cause of action by the requisite weight of the evidence. That was the ground which the judge audibly announced in discharging the defendants from liability. There were other inferential considerations scampering about in his mind.
At the argument of this appeal, counsel for the plaintiff voluntarily and gratuitously alluded to the reputed sharp practices of the representatives of National, but sought haven for his client in the proposal that Budget Corporation, so far as the evidence revealed, became a bona fide holder of the note in due course and for value without notice of any infirmity in the validity of the instrument. N.J.S.A. 7:2-52; 7:2-57; 7:2-59. Assuredly, if the signatures of the defendants as makers were in fact forged, the note became unenforceable against them unless in the circumstances they were precluded by estoppel from asserting that defense. N.J.S.A. 7:2-23. But the trial judge, presumably aware of the statute, did not resolve that in the peculiar circumstances the subsequent conduct of the defendants estopped them from availing themselves of the defense.
We deduce from the ancillary comments of the trial judge in the rendition of his decision that he was convinced that willful "deception," "trickery" and "fraud" had in fact been practiced upon the unwary defendants in the achievement of the bargain. Peculiarly, the testimony of the salesman was not tendered. The plaintiff accepted the note from National without recourse.
Amid those shadows the trial judge upon personal inspection of the note and the study of the associated exhibits rationally entertained the apprehension that a simulation of the signatures of the defendants on the note was not improbable.
*242 The trial judge frankly described the state of his mind. He concluded that the plaintff had failed to sustain its overall burden of proving by a fair preponderance of the evidence that the signatures on the note are those of the defendants.
Assuredly there was evidence projecting that factual issue. We are admonished by R.R. 1:5-4(b) duly to recognize the superior opportunity of the trial judge to determine such characteristics as the sincerity, candor, and veracity of the witnesses in the deliverance of their testimony. Koolvent Aluminum Awning Co. of N.J. v. Sperling, 16 N.J. Super. 444, 447 (App. Div. 1951); N.J. Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309, 317 (App. Div. 1956).
We affirm the judgment.